THE CITY OF DEKALB

*v.*

THOMAS A. LUNEY.

*Opinion filed December 18, 1901.*

1. STREETS AND ALLEYS—*mere adverse possession of portion of street does not bar public right.* Mere adverse possession by a lot owner of a portion of a public street, however long continued, does not, by virtue of the Statute of Limitations, bar the right of the public to be restored to possession of the street to its full width.

2. SAME—*what necessary to estop public from re-claiming portion of a street.* To estop the public from re-claiming a portion of a street enclosed with a lot, it must appear not only that the city authorities have long ceased to exercise control over the strip and that the lot owner has been induced by their acts to believe the strip abandoned, but also that such owner has erected structures or made such valuable improvements on the disputed land that to permit the public to be restored to possession would entail great pecuniary loss or hardship upon the lot owner.

3. SAME—*what not such improvements as protect lot owner's possession.* Improvements placed by a lot owner upon a portion of the public street enclosed with his lot, which consist of a picket fence, a maple tree, lilac bush, creeping vine and grass, are not such valuable improvements as will aid in effecting an estoppel against the public to re-claim the strip.

APPEAL from the Circuit Court of DeKalb county; the Hon. GEORGE W. BROWN, Judge, presiding.

CARNES & DUNTON, and H. W. PRENTICE, for appellant.

JONES & ROGERS, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

Appellee owns and resides with his family on lot 1, block 25, in the original town (now city) of DeKalb. The lot is situated at the south-west corner of the intersection of Fourth and Oak streets, and has a frontage of sixty-six feet on Fourth street and extends along Oak street one hundred and fifty-six feet to an alley. The dwelling fronts on Fourth street, and extends to within ten and one-half feet of a fence which appellee erected in 1886 as being on the north line of his lot and the south line of Oak street. The city council of the city of DeKalb claimed this fence does not stand upon the line of said lot and said Oak street, but that its location is in the street, some feet north of the lot line, and encroached upon and obstructed the street. Surveyors employed by the city to ascertain the true line of the lot and the street located the line five feet south of the fence. The city thereupon served appellee with written notice to remove the fence. Appellee filed this his bill in chancery against the city, alleging it threatened and intended to enter his enclosure, take possession of so much thereof as it claimed was a part of the street, cut down trees, vines and shrubbery growing thereon, etc., to his irreparable injury, and praying the city be restrained, by injunction, from so entering his enclosure and trespassing thereon, etc. A temporary injunction as prayed was granted by the master, and upon a final hearing the injunction was made perpetual. The city, by this appeal, seeks reversal of the decree awarding the perpetual injunction.

There was no material conflict of testimony produced on the hearing. The appellee did not directly allege in his bill that the fence stood upon the true line of his lot, nor did he offer any proof tending to prove such to be the fact. The allegations of his bill are, in substance, that the plat of the town was defectively prepared, and contains nothing on its face to indicate the width, length, corners, boundaries or extent of Oak street or any street or alley of the plat; that he purchased and entered into possession of the lot March 2, 1878; that there was then a fence on the line where his present fence stands, and that a fence had been maintained there for many years prior thereto and that he has maintained a fence there continuously ever since,—a period of more than twenty years,—and on that portion of the enclosure now claimed to be a part of said Oak street he had planted a maple tree, set lilac bushes and vines and shrubbery, and in the faith the fence marked the true north line of his lot built an addition to his dwelling house, extending further north than he otherwise would, so that his dwelling, as improved by the addition thereof, extends to within ten and one-half feet of the line of the fence; that the city had kept and maintained Oak street, built sidewalks along the fence there in recognition of the line as shown by the fence. The appellee did not attempt to produce any proof as to the true line of the lot and street, but sought only to establish the allegations of his bill, to the end he might be found entitled to a decree on the ground that under the existing state of the case the city should be deemed estopped, in equity, to assert any right to the strip of ground in dispute.

In behalf of the city two surveyors were produced. Each testified no difficulty was encountered in locating the line of the streets, alleys, lots and blocks from the original plat of the town. One of them, Mr. Hay, county surveyor of DeKalb county, stated he had made two surveys of the line in question,—one in the winter of the

year 1900, the other in the preceding summer; that Mr.
Armstrong and Mr. Merriam, civil engineers and survey-
ors, joined with him in making one of the surveys; that
he located the line, by the first survey, eight inches south
of the line as determined by the later survey; that the
line of the lot and the street as disclosed by the second
survey was 3.3 feet south of the line of appellee's fence;
that by this latter survey the street is of the width
marked on the plat,—sixty-six feet,—and the lot of ap-
pellee of its proper width as shown by the plat.   One of
the other surveyors, Mr. Armstrong, a civil engineer of
many years' actual experience in surveying the lines of
lots, blocks and streets, testified that in the winter of 1900
he assisted Mr. Hay in the survey of the line of the street
and lot in question; that Mr. Merriam, a civil engineer,
also acted with them in making this survey; that all three
agreed in locating the line of the street and of the lot 3.3
feet south of appellee's fence.   This witness testified he
had before this made a survey of the street line, and
located the line in question still further south, by a few
inches, than the line as located by the survey made by
the witness, Hay and Armstrong acting together, but that
upon a survey made by the three they gave the appellee
the benefit of all uncertainties of every kind and fixed
the line at 3.3 feet south of appellee's fence; that as lo-
cated appellee had remaining a lot of the full width to
which he was entitled as shown by the plat, and that
street line, as determined by this survey, is uniform with
the lot and street lines east and west of appellee's lot,
along said Oak street.   It is true, the cross-examination
of these witnesses developed that the different surveys
all produced a different location of the line; but the dif-
ferences were not great, being that between 3.3 feet and
4.5 feet south of the line of the fence, and that the greater
disparity grew partly out of the voluntary concessions
of the surveyors in favor of appellee.   There was no con-
troverting testimony as to the true line of the street.

The evidence bearing upon the true location of the line of appellee's lot and the street would not admit of any other conclusion than that a portion of the street, of the width of at least 3.3 feet, extended south of appellee's fence and was within his enclosure. Nor did the chancellor reach a different conclusion on the point. The decree did not proceed on the theory the true line of the street and the lot was other than as testified to by the surveyors, but on the ground the city had become equitably estopped to require the appellee to surrender possession of that portion of the street within his enclosure. The facts found and recited in the decree relate, not to the actual boundary line of the lot, but solely to the acts of possession of the disputed territory by the appellee, acts of the city authorities denoting acquiescence in such possession by the appellee, and the making of improvements by the appellee in the faith that the fence stood on the true line,—and upon these findings the decree expressly declares an estoppel in equity against the city, and for that reason decreed the injunction should be made perpetual.

Adverse possession of a portion of the street by the appellee and those in the line of his title or possession, no matter how long continued, had no effect, by reason of the provisions of the Statute of Limitations, to bar the right of the city to be restored to possession of the street to the full width thereof. The title to the street is vested in the city in its governmental capacity, to hold for the use of the public, and the Statute of Limitations does not run in favor of appellee to bar the right of the public. *City of Sullivan* v. *Tichenor*, 179 Ill. 97; *Lee* v. *Town of Mound Station*, 118 id. 304.

The decree proceeded upon the theory an estoppel *in pais* properly arose against the city. Cases have been presented to courts of equity wherein the circumstances were such that right and justice demanded the public should be deemed estopped to assert the right to become

re-possessed of a street or highway which had long been abandoned to the use of private parties. That the possession of a portion of the street or highway has been allowed to remain for any period of time in the possession of the private party is not sufficient to create the estoppel. Nor could any act or acts of abandonment of the street by those in authority in the governing body of the city, no matter though expressly made and declared, operate to create the estoppel, for it is not within the lawful exercise of the power of such authorities to abandon the streets which they hold for the use of the public, so that by the mere act of abandonment rights of the public therein may be lost. It must appear, to create an equitable estoppel against the public in cases such as that at bar, not only that the city authorities have long withheld the assertion of control over the portion of the street in question, and that private parties have been, by the acts of those representing the public, induced, in good faith, to believe the street has been abandoned by the public, but also that on the faith of that belief and with the acquiescence of those representing the public such private party has erected structures on the street, or made improvements thereon of such lasting and valuable character that to permit the public to assert the right to re-possess itself of the premises would entail such great pecuniary loss and sacrifice upon the private property holder that justice and right would demand that the public be estopped. (*Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet,* 79 Ill. 25; *Chicago and Northwestern Railway Co.* v. *People,* 91 id. 251; *County of Piatt* v. *Goodell,* 97 id. 84; *Lee* v. *Town of Mound Station, supra; City of Sullivan* v. *Tichenor, supra.*) This record presents no such case of hardship or sacrifice to the private party, the appellee. The only structure upon that part of Oak street in question, within his enclosure, is the fence itself. It was placed there in 1886, and was, when built, an inexpensive fence composed of wooden posts and pickets.

There is no testimony tending to show its present worth. In the nature of things it cannot be of any considerable value. The only other improvements claimed to have been placed by appellee upon the disputed *locus in quo* is a maple tree about ten years old, a lilac bush, a creeping vine and the grass growing thereon. The maple tree, accepting on the point the testimony of the appellee, is, most probably, not on the disputed strip but on his lot. The rights of the public, clearly, should not be barred upon the ground the loss of the bush, the vine, the lawn, and even of the maple tree, presents such a case of hardship and sacrifice that right and justice demand that the public be estopped. The addition made by the appellee to his dwelling house stands upon his lot and a distance of more than seven feet from the line of the street as established by the surveyors and claimed by the city. No doubt the appellee would much prefer this portion of his dwelling should be farther from the street, and perhaps the value of his premises would be greater if the line of the street was even 3.3 feet farther from the addition to the dwelling; but we are aware of no case wherein it has been held that an equitable estoppel would arise unless the sacrifice or injury upon which it was based arose out of the expenditure of money in some structure or improvement upon the public property sought to be taken by the municipality. The circumstances of this case do not, in justice and right, justify the interposition of equitable principles to defeat the right of the public to the street in question.

The court erred in restraining the appellant city from re-possessing itself of the *locus in quo* in dispute.

The decree will be reversed and the cause remanded to the circuit court, with direction to dissolve the temporary injunction and to dismiss the bill.

*Reversed and remanded, with directions.*