THE VILLAGE OF WINNETKA

*v.*

THE CHICAGO AND MILWAUKEE ELECTRIC RAILWAY CO.

*Opinion filed October 26, 1903.*

1. STREET RAILWAYS—*use of street for street railway is legitimate.* The use of part of a street for street railway purposes is legitimate, and the municipal authorities, acting for the public, may authorize the construction of a viaduct for the tracks, even though it excludes the public, to some extent, from the use of that part of the street.

2. ESTOPPEL—*when village is estopped to demand removal of viaduct.* A village is estopped to insist upon the removal from a street of that part of a street railway viaduct exceeding the width of twenty feet, where the viaduct was built twenty-five feet wide by the company under the supposed authority of an ordinance and under the supervision of the village authorities, who made no objection until the viaduct was completed, and where the ground for the street was purchased by the company and dedicated to the village as part of its agreement for right of way, leaving thirty-two feet for street purposes.

3. EQUITY—*practice—rule where bill prays for general and special relief.* Complainant may be denied the special relief prayed for in his bill, and under the prayer for general relief be granted such relief as he may be found to be entitled to under the allegations and proof.

*Vill. of Winnetka* v. *C. & M. Elec. Ry. Co.* 107 Ill. App. 117, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding.

STACY W. OSGOOD, and MILLARD F. RIGGLE, for appellant:

It is essential to the application of the principle of equitable estoppel, that the party claiming to have been influenced by the conduct or declarations of another, to his injury, was himself not only destitute of knowledge of the state of facts, but was also destitute of any convenient and available means of acquiring such knowledge; and where the facts are known to both parties, or

both have the same means of ascertaining the truth, there can be no estoppel. 11 Am. & Eng. Ency. of Law, (2d ed.) 434; *Mullaney* v. *Duffy,* 145 Ill. 559; *Holcomb* v. *Boynton,* 151 id. 294; *Scates* v. *King,* 110 id. 456.

There can never be an estoppel against a municipality where there is an absolute want of power on its part to do the act or enter into the contract. *Miller* v. *Goodwin,* 70 Ill. 659; Dillon on Mun. Corp. sec. 381; *Building Ass.* v. *Bank,* 181 Ill. 35; *Durkee* v. *People,* 155 id. 354.

The object of a street is for the ordinary passage and travel, which the public and individuals are rightfully entitled to have the use of at all times, and no exclusive use can be granted for private purposes and the public be deprived of the right of travel thereon. The streets of a city are public highways, that from side to side and from end to end are held for the use of the public, and the exclusive use of a public street cannot be granted to any person or corporation for any purpose whatever. *Railway Co.* v. *Railroad Co.* 184 Ill. 588; *Pennsylvania Co.* v. *Chicago,* 181 id. 296; *Railroad Co.* v. *Railroad Co.* 156 id. 265; *Corcoran* v. *Railroad Co.* 149 id. 295; *Ligare* v. *Chicago,* 139 id. 46; *Field* v. *Barling,* 149 id. 556.

A municipal corporation is never estopped to deny its rights to make a contract. The doctrine of estoppel is applied only when acting in its private, as contradistinguished from its governmental, capacity, wherever the act is within its charter powers. *Barnard & Co.* v. *County of Sangamon,* 190 Ill. 116; *County of Cook* v. *Harms,* 108 id. 151; *Chicago* v. *Sexton,* 115 id. 230.

The control or management of railways in streets of cities, fixing grades for tracks, regulating the speed of trains, and other matters, are within the corporate authorities, and they cannot be interfered with by courts of chancery. *Railroad Co.* v. *People,* 92 Ill. 170.

An equitable estoppel can never arise or grow out of an illegal act or an act prohibited by law. *Building Ass.* v. *Bank,* 181 Ill. 35; *Kelley, Maus & Co.* v. *O'Brien & Co.* 90

Ill. App. 287; *Brewing Co.* v. *Klassen,* 185 id. 37; *Sherlock* v. *Winnetka,* 59 id. 389; *Badger* v. *Drainage District,* 141 id. 540; *Cook County* v. *Chicago,* 158 id. 524.

WOOD & OAKLEY, for appellee:

A municipal corporation may be estopped by its own act, as may a natural person, not only in respect to its private property rights, but equally in respect to rights affecting the public. *Chicago* v. *Stock Yards Co.* 164 Ill. 224; *Gregsten* v. *Chicago,* 145 id. 462; *Gridley* v. *Bloomington,* 68 id. 47; *Railway Co.* v. *People,* 91 id. 251; *County of Randolph* v. *Post,* 93 U. S. 502; *Railway Co.* v. *Joliet,* 79 Ill. 25.

If the safety and convenience of its people require it, a municipal corporation may authorize the erection of an elevated street railroad structure in the street, even though such structure impairs the complete use of the street "from side to side and end to end." *Summerfield* v. *Chicago,* 197 Ill. 270; *Doane* v. *Railroad Co.* 165 id. 510.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The appellee company is the successor and assignee of the Bluff City Electric Railway Company. In the year 1898 the former company entered upon the enterprise of building an electric railway, the line whereof passed through the limits of the appellant village. An ordinance was adopted by the village council on the 24th day of May, 1898, authorizing the construction of the railway along Wilson street and across Willow, Maple, and Ash streets of the village, and also across other of its streets not necessary to be mentioned. Nor is it necessary the terms and conditions which were by the ordinance and an agreement of the company annexed to the grant, should be set forth in full. Of these conditions it is only necessary to mention that the ordinance permitted the use of the streets to the width of twenty-five feet by the railway company, and that the ordinance, and the agreement of the company which became a part

thereof, required the railway company to purchase a strip of land, not less than forty-two feet in width, extending from Maple avenue to Willow street, and to dedicate said strip of land to the village for use as a public street, to be called Wilson street extended, and to macadamize the roadway of the street, put in the curbing and lay a sidewalk on the easterly side of the street, said street improvements to be made under the supervision of the village authorities. The ordinance and the agreement provided that said strip of land so to be dedicated and improved by the railway company and to constitute Wilson street extended, should be subject to the right of the railway company to use the west twenty-five feet thereof for its right of way for the period of twenty-five years. The railway company procured the necessary ground and entered upon the construction of the railway and the fulfillment of its obligations under the ordinance.

The ordinance authorized the construction of a line of street railway upon the surface of the ground. It was subsequently ascertained that the conformation of the surface at the crossing of Willow street and Wilson street, and for a short distance along Wilson street and the proposed Wilson street extended, was such that it would be impracticable for the company to lay the track of the road along the surface of the ground, and that the operation of the road along a track on the surface of the ground would be dangerous to the life and limb of passengers and of the public using the street. It was therefore deemed advisable the road should be carried over the depression on an elevated structure. Profiles of the viaduct which, in the opinion of the engineers of the railway company, should be constructed for that purpose were prepared and laid before the village council. In view of this situation the council, on the seventh day of March, 1899, adopted an amendatory ordinance, the record whereof in the book of the record of the proceedings

of the council reads as follows:  "The council of the village of Winnetka do ordain that the ordinance heretofore granted on the 20th day of May, 1898, to the Bluff City Electric Street Railway Company, be and is hereby amended to give said company, its successors and assigns, the right and authority to construct a superstructure or trestle on the west twenty feet of the right of way heretofore granted, between the west line of Maple street and the south line of Willow street, and on Wilson avenue from the south line of Willow street to such point as will make the grade on said trestle-work about one per cent.  Said right and authority are given upon the express condition that said Bluff City Electric Street Railway Company, its successors or assigns, shall cause to be dedicated to the village of Winnetka, for street purposes, the east thirty-six feet of Wilson avenue, extending to the south corporate limits of said village."

The railway company entered at once upon the construction of the viaduct.  It was built of the width of about twenty-three feet.  In the month of July, 1899, the viaduct was completed and the tracks of the railway laid thereon, and the company was ready to operate its cars along the track and over the viaduct.  The company was then notified by the president of the village that the village claimed under the amendatory ordinance the company was only authorized to occupy twenty feet of the street, and that its viaduct exceeded that width and was to that extent unlawfully upon the street.  The company contended that the amendatory ordinance as adopted by the council had not been properly recorded in the record book of the village, and that as adopted the width of the right of way theretofore granted by the former ordinance was not changed, but was expressly recognized and stated in the amendatory ordinance, as the same was adopted, to be twenty-five feet, and also contended that the provisions of the former ordinance and agreement permitting the company to occupy twenty-five feet of

the street was not intended to be changed or affected by the amendatory ordinance, and that under a proper construction of the amendatory ordinance, even as it appeared upon the record, the width of the right of way of the company in the street as fixed by the former ordinance was in nowise reduced or affected. The amendatory ordinance which was introduced into the council and voted upon and adopted could not be found, but the railway company produced a copy thereof, duly certified under the hand and seal of the clerk of the village. This certified copy was made by the village clerk after the adoption and passage of the ordinance but before the same was copied at large in the book in which the ordinances of the village were recorded. The width of the right of way of the appellee company in the street referred to in the amendatory ordinance was shown by this certified copy to be twenty-five feet.

Acting upon the authority of a resolution of the village council, the proper official of the village notified the railway company that it was a trespasser upon the street to the extent of five feet beyond its right of way, and demanded that it should within ten days remove all portions of its viaduct from said five feet of the street. The appellee company thereupon filed its bill in chancery for a writ of injunction restraining the village from in any way interfering with the viaduct, or its use of the same in the operation of its cars. A preliminary injunction was issued as prayed, and upon a final hearing a decree was rendered making the same perpetual. The village prosecuted an appeal to the Appellate Court for the First District, and the decree being affirmed by that court, has perfected this its further appeal to this court.

The master to whom the case was referred, upon consideration of all the evidence bearing upon the point, found that the original pencil draft of the amendatory ordinance "was, on its face, in terms a grant of the use of the entire twenty-five feet constituting the original

right of way under the said ordinance of May 24, 1898, and that said certified copy of said ordinance of March 7, 1899, introduced in evidence as the complainant's 'Exhibit D,' was prepared by said clerk of said village from said original pencil draft of such ordinance of March 7, 1899, so preserved in his said office, on or about the 13th day of May, A. D. 1899," and this finding we think to be well supported by the proofs. The decree, however, was granted upon the theory the village had become equitably estopped from demanding the superstructure beyond the width of twenty feet should be removed from the street.

The general principle relative to the power of the village to remove any structure in a street which excludes the public from the use of that portion of the street is not entirely applicable to the situation. This portion of Wilson street was created under an agreement between the village and the railway company that the company should purchase the ground upon which the street was to be extended and dedicate it to the village, for the purpose of devoting it, in part, to the use of the railway company. Moreover, beyond the limits of the viaduct at least thirty-two feet of the street remained open for the free and uninterrupted use of the public at a point where there had before been no public way, and still further the ground under the greater portion of the viaduct was so rough and uneven that the public could not have used it unless improved, at great cost, for such use. The use of a street for street railway purposes is not an illegitimate use of the public way, as we have frequently declared. The viaduct may exclude the public to some extent from the use of parts of the street, but in *Summerfield* v. *City of Chicago,* 197 Ill. 270, we held that if a city council, acting in good faith, for the best interests of the public, in the matter of elevating railroad tracks at the junction of two streets, determines that the safety of the public will be best conserved by providing a sub-way and sup-

porting the tracks by means of walls in the street, courts will not declare such action unauthorized merely because the plan adopted would result in excluding the public from that portion of the street which would be occupied by the walls of the sub-way.

We think the proof amply warranted the decree on the ground the village should be deemed equitably estopped to demand that the viaduct, or any portion thereof, should be removed from the street. The viaduct was constructed by the company in the belief it had a right to use twenty-five feet of the street. This belief was grounded upon the original ordinance granting it the use of the street to that extent, and also upon a certified copy of the amendatory ordinance which was entirely consistent with that view. From practically the beginning of the work of constructing the viaduct the president of the village council and the village engineer, both acting in their representative official capacities, and the latter in obedience to a provision of the ordinance of the village, had actual knowledge that the company was using more than twenty feet of the street in erecting the viaduct. The original ordinance provided that all the work on the street should be done under the supervision of the village engineer. That official performed that duty in the construction of the viaduct, and the president of the village frequently inspected the work as it progressed, and the manner of building the viaduct was the subject of discussion at different times between these officials of the village and those acting for the railway company in the building thereof, and changes in the work were made at the request of the village authorities. Though it was then well known by the village authorities that the structure occupied more than twenty feet of the street, no objection was made thereto until the viaduct had been entirely completed, the track laid thereon and the structure was ready for the operation of trains over it. Upon the clearest principles of right

and justice the village should not be allowed to then insist that the viaduct should be removed and such great pecuniary loss and sacrifice be inflicted upon the railway company. That equitable estoppels of this nature may be declared and enforced against municipal corporations when good conscience and justice demand has long been the doctrine of this court. *City of DeKalb* v. *Luney*, 193 Ill. 185, and many cases there cited.

The bill alleges that a clerical error was made by the village clerk in transcribing the amendatory ordinance upon the record, whereby the clerk omitted to copy the word "five" in that part of the ordinance which refers to the width of the street to be occupied by the railway company as a right of way, thus leaving the width of the street to be used to appear to be twenty feet instead of twenty-five feet, and the special prayer of the bill was that this clerical error in the record should be amended. The insistence, however, that the relief to be given must be limited by this special prayer of the bill is not well made. The bill contained a general prayer for such further or other relief as the nature of the case may require and as to equity and good conscience may seem meet. "The rule is, where a bill contains a prayer for special relief and also a prayer for general relief, the complainant may be denied a decree for the relief specially prayed for, and under the general prayer be granted such relief as he may be found entitled to have under the allegations of fact made in the bill and the proof in support thereof." (*Gibbs* v. *Davies*, 168 Ill. 205.) The allegations of the bill in the case at bar disclosed all the facts necessary to be known to entitle complainant to a decree on the ground the village should be equitably estopped, and the general prayer for relief authorized the granting of a decree based upon that principle of equity jurisprudence.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*