## City of Aurora et al. v. Elgin, Aurora & Southern Traction Company et al.

### Gen. No. 4,617.

1. RAILROAD COMPANIES—*act authorizing making of operative contracts and permitting the borrowing of money construed.* The act of February 12, 1855, entitled "An act to enable railroad companies to enter into operative contracts and to borrow money" applies to street railway companies as well as to ordinary commercial railroads.

2. CHARTER—*what forms part of, granted to street railway company.* Statutes in force at the time of the grant of a franchise to a street railway company form a part of such franchise, and, as the case may be, confer rights or impose liabilities.

3. CHARTER—*when municipality estopped to deny right to operate under assignment of.* A municipality is estopped to deny the right of the assignee of a franchise to operate thereunder where it for years has permitted such operation without objection and has allowed the assignee to build, develop and improve such line.

4. TRACTION COMPANY—*what not within charter rights of.* The transportation of merchandise is the proper business of a commercial railroad and is not within the ordinary charter rights of a traction company.

5. TRACTION COMPANY—*how municipality must exercise power to regulate operation of.* A municipality has no power by mere resolution to regulate the mode and manner of operation of a traction company; the exercise of such a power by a municipality must be by ordinance.

Bill for injunction. Appeal from the Circuit Court of Kane county; the Hon. LINUS C. RUTH, Judge, presiding. Heard in this court at the October term, 1905. Reversed in part and affirmed in part. Opinion filed July 17, 1906.

E. M. Mangan and Murphy & Alschuler, for appellants; Charles F. Clyne, of counsel.

Hopkins, Peffers & Hopkins, for appellees.

Mr. Presiding Justice Dibell delivered the opinion of the court.

The Elgin, Aurora and Southern Traction Company is a street and interurban railway company organized under the Horse and Dummy Act, and will be called the Aurora company. The Joliet, Plainfield and Aurora Railroad Company is an interurban railway company organized under the general railroad law, and will be herein called the Joliet company. The Aurora company operates a street railway within the city limits of the city of Aurora, besides operating certain interurban lines. The Joliet company operates an interurban railway from the city limits of Joliet to the city limits of Aurora, at a point where a line of street railway of the Aurora company, commonly called the Fifth street line, passes a short distance outside the city limits of the city of Aurora to a city park. On August 5, 1904, the two companies entered into a written contract. It recited that the Aurora company owned and operated a line of railway within the city limits of Aurora, known as the Fifth street line, extending from the city park to the transfer station for interurban cars, on the east side of Fox river, and that the Joliet company owned a line of railroad from the city limits of Joliet, which was projected to connect with said Fifth street line just outside the city limits of Aurora; that the Joliet company was desirous that its passengers be carried from such point of connection into the city of Aurora by said Aurora company, and be taken to said point of connection by said Aurora company; that in order to avoid the transfer of passengers from the cars of the Joliet company to the cars of the Aurora company at the point of connection, it was mutually desirable

that the Aurora company lease the cars of the Joliet company, and thereby bring passengers to said point of connection, and take them therefrom; that the cars of the Joliet company were operated and controlled by the same motive power and were of the same general type and character as the cars of the Aurora company; and that it was mutually desirable that the Aurora company should carry to and from said point of connection, express, mail or other matter destined to or from points on the line of the Joliet company, so far as it was able to do under municipal or statutory ordinances and regulations. It was therefore agreed that the Aurora company, during its regular hours of operation, should carry all passengers of the Joliet company brought to said point of connection therefrom over its Fifth street line to said transfer station for interurban cars on the east side of Fox river, and from said transfer station to said connecting point, and also to carry, so far as it was able to do under municipal and statutory ordinances and regulations, express, mail or other matter destined to or from points on the railway of the Joliet company; and that the Joliet company thereby leased to the Aurora company the cars of the Joliet company necessary for such service, the lease to continue in force during the existence of the present ordinances, or renewals thereof, granting rights to said Aurora company to operate said Fifth street line; that the Aurora company should take the cars of the Joliet company at the point of connection, and use the same for said purpose, and the Joliet company should furnish the necessary employees to operate said cars from said point of connection to said transfer station and back again; and said employees, while operating said cars over the Aurora line, should be considered the employees of the Aurora company, and subject in all things to its regulation; but said employees should be paid by the Joliet company; that said cars, while on the tracks of the

Aurora company, should be considered as the cars of the Aurora company, and operated by it. The contract provided a compensation to the Aurora company for carrying such passengers and provided for the issue of transfers to passengers, if municipal authority should require it of the Aurora company; and provided how the Aurora company should be compensated for such transfers. It provided what compensation the Joliet company should pay to the Aurora company for carrying express, mail or other matter over said Fifth street line, and provided for the manner of keeping the joint accounts, and for making settlements, and for arbitrating differences. It required the Joliet company to hold the Aurora company harmless from all claims for damages or injuries of any kind occurring on the tracks of the Aurora company by means of the use of the cars of the Joliet company. It fixed the frequency with which the Joliet company should furnish service, and bound the Joliet company to pay one-third the expense of the maintenance of a combination express station and passenger depot in the city. When the line of the Joliet company was about completed to the point of connection, the city council passed a resolution directing the mayor to take such steps as might be necessary to prevent any railroad from using the public streets, without having first procured a license from the council; and the mayor thereupon addressed a letter to the Aurora company, notifying it of that action, and that it would not be permitted to operate the cars of the Joliet company over its lines, and that if it attempted to do so, the mayor would use such means as were at his command to prevent it.

Thereafter, on October 20, 1904, the Aurora company and the Joliet company filed a bill in equity to restrain the city of Aurora and its mayor and other officers, from interfering with them in operating the cars of the Joliet company over said Fifth street line

under said contract, and such an injunction was issued. After a demurrer to the bill and a motion to dissolve the injunction, neither of which seems to have been pressed, the defendants answered the bill. Complainants filed exceptions to various portions of the answer, which were argued and sustained. A replication was filed to the rest of the answer, and there was a hearing, and a decree for complainants, making the injunction perpetual. This is an appeal by defendants from said decree.

1. The first question is whether these two companies had power to enter into such an operating contract. The title, and sections 1 and 2 of the act of February 12, 1855, appearing as paragraphs 44 and 45 of Chapter 114 of Hurd's Revised Statutes, are as follows:

"An act to enable railroad companies to enter into operative contracts and to borrow money.

"Sec. 1. All railroad companies incorporated or organized under or which may be incorporated or organized under the authority of the laws of this State, shall have power to make such contracts and arrangements with each other and with railroad corporations of other states for leasing or running their roads, or any part thereof; and also to contract for and hold in fee simple or otherwise, lands or buildings in this or other states, for depot purposes; and also to purchase and hold such personal property as shall be necessary and convenient for carrying into effect the object of this act.

"Sec. 2. All railroad companies incorporated or organized, or which may be incorporated or organized as aforesaid, shall have the right of connecting with each other, and with the railroads of other states, on such terms as shall be mutually agreed upon by the companies interested in such connection."

That this act applies to street railway companies as well as to ordinary commercial railroads is settled by City of Chicago v. Evans, 24 Ill. 52; Illinois Midland Railway Co. v. People, 84 Ill. 426; and Archer v.

T. H. & I. R. R. Co., 102.Ill. 493; and this was recognized as the law in Lieberman v. C. R. T. Co. 141 Ill. 140. The case of the City of Chicago v. Evans, *supra,* shows the limitations under which that statute is applied to a case like the one before us. It is there held that while roads employing the same propelling power and created for the same purposes may so connect under the act above quoted, yet no such company acquired new or greater powers or privileges by virtue of such connection, and that the provisions of the charter of the company whose road is being so used must govern the performance of the contract upon its line. In other words, as applied to this case, the Joliet company, when its cars pass upon the Fifth street line, does not carry upon that line its charter and privileges, but this contract can be carried out only so far as the charter of the Aurora company permits it to be done. In fact, the contract provides that when the Joliet cars are on the Aurora line they shall be considered as the cars of the Aurora company, and complainants are asserting the validity of that contract. The charter of the Aurora company authorizes the carriage of passengers over its lines. It does not authorize the carriage of freight, express or mail, or of baggage, except the implied permission to carry customary hand baggage in the personal custody of the passenger. The proof shows that the cars of the Joliet company are operated by the same power as those of the Aurora company, and are of like shape and character, and of like size and weight as other interurban cars passing over other lines of the Aurora company to its transfer station, but heavier than its own cars on the Fifth street line. So far as appears, the city has not adopted any regulations prescribing or limiting the size or weight of the cars which the Aurora company may use. Therefore the Aurora company had a right to purchase or hire cars like those of the Joliet company, and operate them over its Fifth street line, meeting the Joliet cars at the point of connection, and

receiving transfer of passengers. If it had done so, we find nothing in the charter of the Aurora company which would have enabled the city successfully to object thereto. If the Aurora company could have carried these passengers over its line in cars of its own like those of the Joliet company, our conclusion is that it could arrange that, instead of transferring the Joliet passengers to its own cars, it would transfer the Joliet cars and passengers to its line, and conduct them to said transfer station, and from the transfer station back to the point of connection. The statute above quoted was in force when the franchise of the Aurora company was granted to it, and, in legal effect, entered into that charter. From the language of the bill and of the decree and of the opinion of the trial judge, copied into the record, and from the briefs of appellee filed herein, we think it was the intention that this decree should only restrain the city from interfering with the passage of the Joliet cars and passengers over said Fifth street line to the transfer station and back again, and that the bill did not intend to seek, nor did the court design to give, a decree establishing in complainants the right to transfer baggage, freight, express and mail. Yet there are some ambiguous expressions in the decree hereafter noted, which might bear that construction. We hold that as the charter of the Aurora company did not authorize it to carry baggage, freight, express and mail over its line, it had no power to make a valid contract with the Joliet company for the carriage of such merchandise within the city limits. The transportation of such merchandise is the proper business of a commercial railroad, and is not within the ordinary charter rights of a street railroad, nor is it within the grant to the Aurora company. Wilder v. Aurora, DeKalb & Rockford Electric Traction Co., 216 Ill. 493; Hartshorn v. Ill. Valley Traction Co., 210 Ill. 609; Harvey v. Aurora & Geneva Ry. Co., 174 Ill. 295; Pa. R. R. Co. v. Montgomery Co. Pass. R. R. Co., 167 Pa. St. 62, 27 L. R. A.

766; C. & N. W. Ry. Co. v. M. R. & K. E. R. Co., 95 Wis. 561, 37 L. R. A. 856; Zehren v. Milwaukee E. R. & L. Co., 99 Wis. 83, 41 L. R. A. 575; and Diebold v. Ky. Traction Co., 117 Ky. 146, 63 L. R. A. 637.

2.    The answer asserted that the Joliet cars were heavier than the Aurora cars, and might harm the roadways and a certain viaduct in the city over which they pass. The charter of the Aurora company did not limit the size or weight of the cars it might operate. The city, by that charter, did retain the right to regulate the manner of operating the Aurora road as the public safety might require. As already suggested, it does not appear that the city had adopted any regulations concerning the weight of cars to be operated upon the lines of the Aurora company. It is manifest such regulation would have to be reasonable, and would have to be fixed by an ordinance duly adopted, and that the city could not, by a mere resolution, forbid certain cars from passing over the street railway. A mere resolution is not a law. Permanent legislative regulations by a municipality must be by ordinance, and not by a resolution which can be passed by a mere majority of a quorum and takes effect without the approval of the mayor. Such regulations should be general and apply equally to all like cases within the municipality. People v. Mount, 186 Ill. 560; City of Paxton v. Bogardus, 201 Ill. 628; People v. Blocki, 203 Ill. 363. Moreover the weight of the cars was not at all the objection made in the resolution passed by the city council, as before stated. It is also set up in the answer that the cars of the Joliet company do not stop at each street to take on passengers, and that the Joliet company does not issue transfers to passengers in its cars within the city limits, and that its cars have a toilet room. The charter of the Aurora company, so far as our attention is called to it, does not require the Aurora company to stop its cars at each street. It does not appear that the city has passed any ordinance establishing such regulations, or for-

bidding the use of toilet rooms on cars within the city. If it should do so, and if that ordinance should be violated, or if the provision of the charter of the Aurora company with reference to transfers has been violated, the city would have a proper remedy, but that remedy would not be to forbid the Aurora company to transport the cars of the Joliet company over the Fifth street line. It is asserted in the answer that wires of the Aurora company passing along the Fifth street line, other than the wire which conducts the cars on that line, carry a greater current of electricity than is necessary to operate said line within the city limits only, and a current dangerous to human life, and that it thereby supplies power to conduct the cars of the Joliet company some miles beyond the city limits. The city had not taken any action in reference to the current passing over those wires, and the bill was not filed to litigate the right of the companies to have such current upon such wires of the Aurora company, and that part of the answer which was devoted to that subject was not germane to the bill of complaint. The same is true of several other allegations in the answer which need not be considered. We have only incidentally touched upon the questions raised by the exceptions sustained to portions of the answer, and by objections sustained to proof offered by defendants. If we are correct in holding that the bill and the decree were only intended to relate to the transfer of Joliet cars over the Fifth street line containing only passengers and what is customarily carried by a street railway, then those rulings were generally correct and the decree is correct. If the purpose of the bill and decree had been to restrain interference with the transfer of baggage, freight, mail and express in Joliet cars over the Fifth street line, a different conclusion would follow.

3. The answer asserts that the rights under which the Aurora company is operating its Fifth street line

came from two sources: one, a charter granted to a prior street railway company, which, by its terms, was not assignable, and therefore the Aurora company, by the assignment to it of that charter, did not acquire the right to operate that line; and the other, a charter granted to an individual, and by him assigned to the Aurora company, which charter was void, because an individual cannot take such a grant. A special certificate taken by appellees shows that in argument, and in answer to questions by the court, counsel for defendants conceded that the city, having permitted the Aurora company to act for years under assignments of those charters, and to build its lines and operate them, was estopped to interfere with the Aurora company in conducting its own cars and business upon the Fifth street line. This concession was in harmony with the authorities. Village of Winnetka v. C. & M. E. Ry. Co., 204 Ill. 297. An effort is made to show that in a brief filed in the lower court counsel for the city conceded more than that, but we deem this immaterial. In our view of the statute above cited, and of the authority thereby granted, the Aurora company, having the right to operate this Fifth street line itself, had the right to make this contract so far as related to the transfer of passengers in passenger cars of a size and weight not forbidden by its charter nor by an established and reasonable municipal regulation. But if that were not so, it cannot be ousted of the franchises and licenses which it is exercising and using and had been exercising and using for years, by virtue of a decree in favor of the city as defendant in a bill in equity. The remedy to oust the Aurora company of any franchise and license it is improperly exercising, is at law.

4. While the framework of the bill was aimed at the action of the court in preventing the Aurora company from carrying these cars with passengers over its line, yet the prayer of the bill was broader, and the

preliminary injunction restrained defendants from in any manner interfering with the Aurora company and the Joliet company in the running and operating of cars leased by the Aurora company from the Joliet company over its Fifth street line. The decree adjudged that the temporary injunction be made permanent, and that the city and its mayor and officers be permanently enjoined from interfering with the Aurora company and the Joliet company in the exercise of their rights under said contract, in the running and operating of cars leased by the Aurora company for the transportation of passengers by said Aurora company over its Fifth street line from the point of connection to the power house near said transfer station. The first part of said decree, making the temporary injunction permanent, would forbid the city to interfere not only with the transfer of cars containing passengers, but also with the transfer of cars containing freight, baggage, mail and express. In our view it should have been restricted so as only to forbid an interference with the transfer of passenger cars and passengers. So much of the decree as in general terms makes the temporary injunction permanent will be reversed, and the rest of the decree will be affirmed. Appellants will pay three-fourths and appellees one-fourth of the costs of this court.

*Reversed in part and affirmed in part.*

Mr. Justice Willis granted the temporary injunction in the court below, and therefore took no part in the consideration of the cause in this court.