OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY ET AL., APPELLEES, V. CITY OF OMAHA ET AL., APPELLANTS.

FILED OCTOBER 6, 1911. No. 16,541.

1. Injunction: MUNICIPAL CORPORATIONS: INTERFERENCE WITH CORPORATE PROPERTY. Where a city by the affirmative acts of its officers and agents has for a long series of years authorized and acquiesced in the expenditure of large sums of money and in the acquisition of valuable property by a corporation in establishing and conducting a business enterprise under a claim or color of right and contract to and with persons, companies and corporations to furnish them with valuable and indispensable services to enable them to carry on their business enterprises therein, a court of equity will restrain the city authorities from ousting the corporation by destroying its property and business without compensation.

2. Evidence examined and found to require a modification and affirmance of the judgment of the district court.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed as modified.*

*Harry E. Burnham, I. J. Dunn* and *John A. Rine*, for appellants.

*John Lee Webster* and *Myron L. Learned, contra.*

BARNES, J.

Action brought by the Omaha & Council Bluffs Street Railway Company in the district court for Douglas county to restrain the city of Omaha and Waldemar Michaelsen, as city electrician, from removing or causing to be removed all of the plaintiff's conduits, wires and poles located in, under, upon or over the streets, alleys, thoroughfares or public places of the defendant city, maintained and used by the plaintiff for furnishing or transmitting electricity to private parties or premises for light, heat or power purposes.

It appears that when the issues were made up the Burkley Printing Company, the Omaha Structural Steel Works, the McCord-Brady Company, Hayden Brothers, the Klopp & Bartlett Company, the Wilson Steam Boiler Company, the Williams & Mount Company, Frederick J. Wearne (doing business as Wearne Bros.) and Thomas F. Stroud (doing business under the name of T. F. Stroud & Company), persons, companies and corporations to whom the plaintiff for many years had been and was then furnishing electricity for those purposes, intervened and joined the plaintiff in its prayer for equitable relief. The cause was tried, and the district court found the facts generally in favor of the plaintiff and the interveners, decreed to them a permanent injunction, and from that judgment the defendants have appealed.

The contention of the parties may be briefly summarized as follows: The defendants claim that the plaintiff company had no franchise or right to occupy the streets, alleys and public places of the defendant city, but was a trespasser thereon; that, if it had any such right, the business of furnishing electricity to private parties or

premises for light, heat or power purposes is outside of and beyond its corporate powers as a street railway company; that if the plaintiff had, by ordinance or otherwise, acquired any right to engage in that business within the defendant city, the right or power so obtained was a mere privilege or license, which could be revoked by the mayor and council of the defendant city at any time, and therefore the judgment of the district court was wrong and should be reversed. On the other hand, the plaintiff contends that it had a franchise as a street railway to conduct its business within the city of Omaha, which extends at least until the year 1917, and therefore it was not a trespasser upon the streets, alleys and public places of the defendant; that furnishing electricity for power, heat and light purposes to private persons, including the interveners, is incidental to and might be properly exercised as a part of its corporate powers; that the city had for some 20 years recognized the fact that the plaintiff had such incidental right and power, had in fact granted the same to the plaintiff by ordinance duly enacted by the mayor and city council in that behalf; had regulated the manner of the use of such power, and had ordered the plaintiff to separate its electric current and wires used for that purpose from those used for propelling its street cars, and place the same underground and in conduits; that the plaintiff had complied with such order at an expense of about $140,000; that the threatened destruction of its property used for that purpose without compensation would result in great and irreparable loss and damage to the plaintiff, as well as to the interveners, and therefore the city was estopped to claim that it had the right to destroy plaintiff's property and business without compensation; that the judgment of the district court was right, and should be affirmed.

It appears from the bill of exceptions that in the year 1866 the territorial legislature granted to certain persons a corporate franchise, and authorized them to construct and operate a horse railway in the city of Omaha for the

period of 50 years; that in 1868 the city council passed an ordinance granting to the Omaha Horse Railway Company the right to maintain and operate a single or double-track railway over and along such streets within the limits of the city of Omaha as the company might thereafter select, providing the company should conform to the provisions of the act of the legislature incorporating it; that in May, 1888, there was submitted to a vote of the people of the city of Omaha an ordinance purporting to grant to the Omaha Cable Tramway Company a franchise to construct and operate a cable tramway in the city of Omaha; that the question was submitted to a vote of the people, and the city clerk thereafter certified that the proposed franchise had been carried or adopted; that the Omaha Cable Tramway Company was incorporated for the purpose of building and operating a cable tramway in the city of Omaha, in April, 1888; that in 1889 the legislature of this state passed a law (laws 1889, ch. 38) authorizing any street railway company existing in pursuance of law in this state, or which might thereafter be organized, whose road had been located and constructed so as to conform with the road of any other street railway company theretofore organized, thus making connected or continuous lines or routes of travel or transportation, to consolidate its railway property and appurtenances with such other street railway and convert its property and appurtenances into a single corporation; that after such consolidation should be completed the corporation resulting therefrom should by operation of law succeed to and hold in perpetuity all of the property, rights, powers and franchises conferred upon said constituent companies; that in March, 1889, the Omaha Cable Tramway Company and the Omaha Horse Railway Company, the two corporations which at that time claimed to own and possess franchises in the city of Omaha for the operation of street railways, and which were actually operating street railways in said city, consolidated by adopting and filing articles of incorporation and comply-

ing with the requirements of that law; that in 1887 there was submitted to and adopted by a vote of the people of Omaha an ordinance, called No. 1434, proposing to grant to a corporation called the Omaha Motor Railway Company a franchise for a period of 30 years, covering a number of streets in said city (which need not here be further described); that on November 1, 1889, the Omaha Motor Railway Company gave a deed of conveyance to the Omaha Street Railway Company, transferring to that company all of its rights, title and interest in and to its franchise and street railway interests in the city of Omaha; that on December 5, 1889, the first amendment to what was called the charter of the Omaha Street Railway Company, being the ordinance of consolidation between the Omaha Cable Tramway Company and the Omaha Horse Railway Company, was adopted; that on January 9, 1902, the second amendment to the articles of incorporation or charter of the Omaha Street Railway Company was also adopted; that on the 7th day of October, 1902, the stockholders of a corporation, called the Omaha & Florence Street Railway Company, amended its articles of incorporation, changing the name of that company to the Omaha & Council Bluffs Street Railway Company, and increasing its capital stock from $200,000 to $15,000,000; that on the 22d day of November, 1902, the Omaha Street Railway Company by deed conveyed to the Omaha & Council Bluffs Street Railway Company, the plaintiff herein, all of its properties, rights and franchises, and it is under the foregoing acts, ordinances and transfers that the plaintiff company claims the right to conduct the business of a street railway in the defendant city.

It will thus be seen that it cannot be said that the plaintiff has no color of right to operate its street railway within the defendant city. It appears, however, that neither the validity of plaintiff's franchise nor the length of its duration was considered or determined by the district court, and defendants in their brief concede that in justice to all the parties this court should at this time re-

frain from passing upon those questions. We therefore decline to definitely pass judgment upon them.

It further appears that as early as September, 1882, the city of Omaha, by its mayor and council, recognized the right of any person, company or corporation to erect and maintain poles upon and along the streets of the city of Omaha for the purpose of transmitting electric current, and by ordinance granted to the Northwestern Electric Light & Power Company authority to erect poles and conduct wires along the streets of the city for transmitting electric current, by which it was also provided that "the mayor and council may authorize any other company or person to use the wires and poles that may be erected, upon just compensation;" that in May, 1884, the city council.passed ordinance No. 756, which was approved by the mayor, regulating the construction and maintenance of wires and conductors for transmitting electric current in the city of Omaha, which was a general regulation applying to the business of transmitting electric current by wires which by its terms applied to any person, company or corporation that elected or chose to transmit electric current for power purposes and thereby the city of Omaha recognized the right of an electric street railway company, if it chose to do so, to transmit electricity upon wires or conductors for general electric purposes; that in April, 1886, the city council passed ordinance No. 1031, which was duly approved, and the right of electric street railway companies or of any other person or company to transmit electric current by wires upon poles or other conduits for any legitimate business was thereby recognized, and to that end the ordinance provided, in substance, that any person or corporation, before making any excavation in any street or alley, or erecting poles for the. placing of electric wires therein, should first obtain authority in writing so to do from the chief engineer of the fire department, and any person or company obtaining such permit was thereby authorized, empowered and entitled to either erect poles or construct

conduits for the transmission of electric current for power and other purposes; that an ordinance was passed and approved in December, 1892, defining the duties of the city electrician of the defendant city, and establishing rules and regulations concerning electric wires and poles, which provided for the procuring of a license from the city electrician, and gave him the power over and control of all wires that might be used to carry an electric current for either light, heat or power. It appears that this ordinance applied to all persons or companies generating electric current for light, heat or power, and recognized the right of any person, company or corporation to furnish electricity for those purposes to whom permits should be granted under the terms of that ordinance; that under its terms permits were granted to the plaintiff company and its predecessor, the Omaha Street Railway Company, for the transmission of electric current for light, heat and power purposes; that the Omaha Street Railway Company began the sale of electric current for power purposes in February, 1892, and for lighting purposes in June, 1892, and the Omaha Street Railway Company and its successor, the Omaha & Council Bluffs Street Railway Company (the plaintiff herein), continued to furnish electric current for light, heat and power purposes to its customers from 1892 to the present time; that as early as 1893 the Omaha Street Railway Company began selling electric current to the board of education of the city of Omaha, to be used for power purposes, and the plaintiff company has continued so to do until a recent date; that under and by the terms of the ordinances above mentioned the plaintiff has contracted with, and has furnished electric current to, the intereners and others, by and with the consent of the city, and under the direction of the city electrician, and has complied with the regulations and ordinances of the city in that behalf.

It further appears that the city by ordinance required the plaintiff company to place its wires used for carrying electric current for power, light and heat purposes in

conduits underground; that by section 1 of an ordinance passed and approved in March, 1902, it was provided: "That all persons and companies owning, maintaining or operating electric wires or other wires in the city of Omaha and in the district hereinafter defined, for the transmission of electricity for light, heat and power, shall, on or before the 1st day of October, 1906, place underground all such wires, and after said date no person or companies shall be permitted to maintain in said district in any streets, alleys or public grounds of said city, any electric or other wires, without first complying with the provisions of this ordinance, excepting, however, such feeder and trolley wires as may be used for propelling street cars, and telephone and telegraph wires;" that the ordinance above quoted was intended and did apply to the plaintiff herein, and that thereafter the plaintiff complied with its terms by separating its wires used for the purpose of transmitting electricity for power, heat and light purposes from those used for propelling its street cars, purchased and installed machinery to that end, and placed its wires in conduits underground at a large expense, approximating $140,000; that the plaintiff in furnishing electricity to the interveners and others has since complied with all of the rules and regulations adopted by the defendant city and its electrician; that the interveners, relying upon existing conditions and the facts above stated, have for many years obtained the electric power necessary to conduct and carry on their several lines of business in the city of Omaha, and under present existing conditions are unable to obtain such electric power from any other source.

We are therefore of opinion that the general finding of the district court in favor of the plaintiff and interveners was right, and should be adopted by this court. With this view of the case, we are not required to determine the question of the incidental powers of the street railway company. It is sufficient to say that the company supposed that it had the power under its charter to engage

in the business of which the defendants now complain, and the city by its officers and agents assumed that it had such power, and by its acts not only permitted, but induced, the plaintiff to expend large sums of money, acquire valuable property, and enter into contract relations with the interveners and others to carry on that business. It follows that it would now be unjust and inequitable to permit the city to destroy plaintiff's property and business, which it has thus fostered and encouraged, without compensation, and also deprive the interveners of their contractual rights therein.

A like question was before us in the case of *State v. Lincoln Street R. Co.,* 80 Neb. 333, where it was said: "The courts, in a proper case, will apply the doctrine of laches to a case in which the state is a party plaintiff. The state, like individuals, may be estopped by its acts or laches, and should not be allowed to oust a corporation of its rights and franchises where, for a long series of years, it has stood silent and seen the corporation expend large sums in the acquisition of property and improvements made thereon under a claimed right so to do under its charter." This is a well-recognized rule of equity, and is supported by *City of Chicago v. Union Stock Yards & Transit Co.,* 164 Ill. 224; *Chicago & N. W. R. Co. v. West Chicago Park Commissioners,* 151 Ill. 204; *Village of Winnetka v. Chicago & M. E. R. Co.,* 204 Ill. 297; *City of DeKalb v. Luney,* 193 Ill. 185; *Spokane Street R. Co. v. City of Spokane Falls,* 6 Wash. 521, 33 Pac. 1072; *Town of New Castle v. Lake Erie & W. R. Co.,* 155 Ind. 18; *City of Sioux City v. Chicago & N. W. R. Co.,* 129 Ia. 694; *Gregsten v. City of Chicago,* 145 Ill. 451; *People v. City of Rock Island,* 215 Ill. 488. We deem further citation of authorities in support of this rule unnecessary. We are of opinion that the facts of this case bring the defendants within the rule of *State v. Lincoln Street R. Co., supra,* and therefore the judgment of the district court should be affirmed.

Finally, it is suggested by the defendants that, if the

judgment of the district court should be affirmed, the injunction awarded should be modified. We think there is much force in this contention. It appears that the injunction by its terms .was made perpetual, and, if not modified, may be at some future time construed so as to forever prevent the city from ousting the plaintiff from its streets and alleys under any circumstances. It seems clear that the operation of the order of injunction should not extend beyond the date of the expiration of the plaintiff's franchise, and that the defendant should only be restrained from interfering with or destroying the plaintiff's conduits, poles, wires and other property without compensation while the present conditions exist, and until the expiration of the plaintiff's alleged or colorable franchise.

It is therefore ordered that the injunction be so modified, and as thus modified the judgment of the district court is affirmed.

AFFIRMED AS MODIFIED.

SEDGWICK, J., concurs in affirming the judgment of the district court.