844

Circuit Court of Appeals, Eighth Circuit.

Nov. 23, 1938.

Rehearing Denied Dec. 9, 1938.

Daniel Stubbs, of Lincoln, Neb. (Clarence A. Davis and James N. Ackerman, both of Lincoln, Neb., on the brief), for appellant.

C. A. Sorensen, of Lincoln, Neb. (H. L. Kyle, of Lincoln, Neb., on the brief), for appellees.

Before STONE, GARDNER, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

Appellant, a public utility corporation, engaged in the generation, transmission, and sale of electric energy, brought this suit in equity against appellees, the City of Minatare, a municipal corporation of Nebraska, the members of its City Council, and its clerk, seeking to enjoin appellees from constructing, maintaining or operating within the City of Minatare an electric light and power generating, transmission or distribution system, and from interfering with the quiet enjoyment of the property theretofore leased by the appellant from the City of Minatare, and from attaching to the lines of the city any of the customers of plaintiff within the city, or from doing any other act to interfere with the undisturbed possession of said leased property by the appellant. It will be convenient to refer to the parties as they appeared below.

Plaintiff, in its amended bill of complaint, alleged that its predecessor in interest had leased from the city its electric distribution system, and that its lease will not expire until approximately seven years from the date of commencing suit; that this lease was effected through the enactment of an ordinance, by the terms of which the city not only leased its distribution system to plaintiff's assignor and predecessor in interest, but granted a franchise for the operation of the leased system during the term of the lease; that in consideration of the lease and pursuant to its terms, it and its predecessor built a transmission line from Scottsbluff, Nebraska, to Minatare, at a substantial expense, and reduced the rates for furnishing electricity to the city; that it was operating the said distribution system in Minatare at a profit; that in January, 1937, the defendant city and its officers initiated proceedings which culminated in the election which authorized the city to construct, purchase, or otherwise acquire an electric light and power distribution system; that plans and specifications for such system were filed with the city clerk and notice given that bids would be received on December 7, 1937, for the construction called for by these plans; that the defendants threaten to construct a municipal electric distribution system; that

they have solicited customers of the plaintiff to purchase such electric current as they may need during the period of five years, from the proposed municipal electric light and power system; that plaintiff has in said city 252 customers, and that the defendants have secured 186 of these customers to sign an agreement to abandon the service of plaintiff and to accept the service of the municipal plant; that the defendants, unless restrained, will immediately construct a distribution system and will "cut and detach the said described customers from the lines of the plaintiff and destroy that part of the distribution system leased by the said city to plaintiff in violation of the covenants and promises in said lease, and that as a result of said unlawful acts and conduct the value of the property so leased by the City of Minatare to the plaintiff will be so greatly impaired as to be rendered useless and valueless to the plaintiff;" that telephone lines as well as the leased distribution system now occupy the streets and alleys of the city, and defendants intend to build a duplicate distribution system in and along the same streets and alleys as those now occupied by said leased distribution system, and they intend to construct lines by overbuilding and underbuilding and crossing and recrossing said leased distribution system, and that such construction will result in increasing the cost of maintenance and operation of the system leased to plaintiff; that there will be a constant hazard of contacts between the wires of the two systems, and from time to time contact of wires will occur, resulting in the danger of fires, injuries to customers, increased expense in patrolling and inspecting the system of the company, and necessitating additional expense whenever the lines of the company are repaired or rebuilt; that under its lease it is entitled to quiet enjoyment and undisturbed possession of the leased property during the term of the lease, and that the construction of the competing system will deprive plaintiff "of all of the value of the property leased and will increase the expense and hazards of its operation;" that substantially all of the houses and places of business in the city are now receiving electric service, and that there are no other customers available, and that any customers in the city which the municipal system may acquire, will be acquired by detaching them from the lines of plaintiff. It was also alleged that the construction of the competing system by the city would be in direct violation of the terms of its lease. The lease relied upon was attached to the bill of complaint, and by reference made a part of it.

The defendants moved to dismiss the bill of complaint for want of equity. This motion was sustained by the court and the bill was thereupon dismissed, and from the judgment of dismissal this appeal is prosecuted.

Counsel, in their brief, say that the question presented is whether or not one may enjoin a threatened breach of a covenant of quiet enjoyment and undisturbed possession in a lease of the character here involved. The lower court was of the view that the plaintiff had an adequate remedy at law, and hence, was not entitled to maintain this suit in equity.

 The ordinance embodying the lease contains no specific covenants, so that the covenants relied upon are those which may be implied. Neither the lease nor the franchise conferred upon plaintiff an exclusive right or license to maintain and operate the electric light and power system in Minatare. As said by the Supreme Court of Nebraska in Bell v. David City, 94 Neb. 157, 142 N.W. 523: "It is also true that the plaintiffs do not have any exclusive right to operate an electric light plant in David City, and the city therefore has a right to proceed to build another plant, but must of course follow the law in so doing."

It is urged that the lease of the existing distribution system to the plaintiff was unenforceable. But if unauthorized in the first instance, the city would probably now be estopped to urge such invalidity because the plaintiff, in reliance upon the provisions of the lease, has made very substantial expenditures of money. Omaha & C. B. St. R. Co. v. City of Omaha, 90 Neb. 6, 132 N.W. 731; State v. McIlravy, 105 Neb. 651, 181 N.W. 554. We therefore have a situation in which the plaintiff is maintaining an electric distribution system, but the city has a right to construct and maintain its own lighting system in competition therewith. In doing so, however, due regard must be given to the rights of plaintiff. The municipal system should be so constructed as not unnecessarily to interfere with the

846

property rights of plaintiff. Bell v. David City, supra. It is not alleged in the bill of complaint that the plans and specifications for the new system are so drawn that the construction of the system will unnecessarily interfere with the present lighting system. True, it is alleged that the construction of the proposed system will seriously interfere with the present system, but so long as the city is doing an act which it has a right to do, plaintiff can not complain unless it is exercising that right in some improper or unlawful manner, resulting in damage to it. It might be implied from the allegations of the bill of complaint that the construction of any duplicate system in the city would be destructive of plaintiff's property, but so long as that right exists and plaintiff took its lease knowing of such right, the hazard would seem to be one attaching to the enterprise. Joplin v. Southwest Missouri Light Co., 191 U.S. 150, 24 S.Ct. 43, 48 L.Ed. 127. It is alleged that the construction of the competing system "will deprive plaintiff of all the value of the property leased." This is far from an allegation that the city is not exercising its right to install a competing plant in a proper or lawful manner. Competition is one of the risks pertaining to every business that is not protected by a monopoly. As said by the Supreme Court in Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 304, 82 L.Ed. 374:

"The claim that petitioner will be injured, perhaps ruined, by the competition of the municipalities brought about by the use of the moneys, therefore, presents a clear case of damnum absque injuria. Stated in other words, these municipalities have the right under state law to engage in the business in competition with petitioner, since it has been given no exclusive franchise. If its business be curtailed or destroyed by the operations of the municipalities, it will be by lawful competition from which no legal wrong results.

"What petitioner anticipates, we emphasize, is damage to something it does not possess—namely, a right to be immune from lawful municipal competition. No other claim of right is involved."

We are of the view that plaintiff's amended bill of complaint did not state facts sufficient to entitle plaintiff to injunctional relief, and the judgment appealed from is therefore affirmed.